CASD Pro Se Non-Prisoner Form (Rev. 5/24) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Southern District of California



FILED

Nov 26 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ AlejandraIslas          DEPUTY

HUYUN BO

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA,  BEN WHITE

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.    **'24 CV 2212 BEN KSC**

*(to be filled in by the Clerk's Office)*

Jury Trial:  *(check one)*   ☑ Yes   ☐ No

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | HUYUN BO |
| Street Address | 4032 Caminito Davila |
| City and County | San Diego, U.S.A. |
| State and Zip Code | California  92122 |
| Telephone Number | ( 858 ) 7897872 |
| E-mail Address | jdbo33@163.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title *(if known)*.  Attach additional pages if needed.

1

CASD Pro Se Non-Prisoner Form (Rev. 5/24) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA |
| Job or Title *(if known)* | Office of the Secretary and Chief of Staff to the Regents |
| Street Address | 1111Franklin St.,12th floor |
| City and County | Oakland, U.S.A. |
| State and Zip Code | California   94607 |
| Telephone Number | |
| E-mail Address *(if known)* | regentsoffice@ucop.edu |

Defendant No. 2

| | |
|---|---|
| Name | BEN WHITE |
| Job or Title *(if known)* | Director-Student Affairs Policy,Standards,and Conduct |
| Street Address | 9500 Gliman Dr. , UCSD |
| City and County | San Diego, U.S.A. |
| State and Zip Code | California 92093 |
| Telephone Number | |
| E-mail Address *(if known)* | btwhite@ucsd.edu |

Defendant No. 3

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | |
| Job or Title *(if known)* | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address *(if known)* | |

2

CASD Pro Se Non-Prisoner Form (Rev. 5/24) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal Question          ☐ Diversity of Citizenship          ☐ U.S. Government Defendant

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

Fifth,Sixth,and Fourteenth Amendments of the
Constitution: double jeopardy etc.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff,  *(name)* _____, is a citizen of the

        State of *(name)* _____. Or is a

        citizen of  *(foreign nation)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant,  *(name)* _____, is a citizen of

        the State of *(name)* _____. Or is a citizen of

        *(foreign nation)* _____.

    b.    If the defendant is a Limited Liability Company (LLC)

        The defendant LLC's individual members, *(names)* _____

        are citizens of the following States or foreign nations *(names)*:

        _____.

CASD Pro Se Non-Prisoner Form (Rev. 8/27/24) Complaint for a Civil Case

    c.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Venue

The Southern District of California includes the Counties of San Diego and Imperial. If <u>one</u> of the venue options below applies, the Southern District is the correct place to file your lawsuit.

Venue is appropriate in this Court because *(check all that apply)*:

☑    a substantial part of the events I am suing about occurred in San Diego or Imperial County

☐    a substantial part of the property I am suing about is located in San Diego or Imperial County

☐    I am suing the U.S. government, federal agency, or a federal official in his/her/their official capacity <u>and</u> I live in San Diego or Imperial County

☐    at least one defendant resides in this district and all other defendants reside in California

☐    Other (identify the specific statute that says venue is proper here):

_____.

CASD Pro Se Non-Prisoner Form (Rev. 5/24) Complaint for a Civil Case

**IV.    Statement of Claim(s)**

Write a short and plain statement of each claim or legal cause of action you believe entitles you to relief.  In your own words, briefly explain <u>what</u> each defendant did, <u>when</u> and <u>where</u> they did it, and <u>how</u> each defendant's acts or omissions caused you harm. If you wish to make more than one claim for relief, number each one and include a short and plain statement of each claim in a separate paragraph, as set forth below. Attach additional pages if needed.

A.    FIRST CLAIM FOR RELIEF: <u>the four-year suspension penalty invalid</u> (identify the law or right you

claim was violated), by <u>Board of Regents of the University of California, Ben White</u>

(name the defendant(s) involved).

Supporting Facts (explain what happened):

Please see the attached pages, a total of 9 pages.

CASD Pro Se Non-Prisoner Form (Rev. 5/24) Complaint for a Civil Case

**IV.  Statement of Claim(s) (cont'd)**

      B.      SECOND CLAIM FOR RELIEF: _____ (identify the law or right

you claim was violated), by _____

(name the defendant(s) involved).

Supporting Facts (explain what happened):

      C.      THIRD CLAIM FOR RELIEF: _____ (identify the law or right

you claim was violated), by _____

(name the defendant(s) involved).

Supporting Facts (explain what happened):

CASD Pro Se Non-Prisoner Form (Rev. 5/24) Complaint for a Civil Case

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.

☐    Money damages in the amount of:_____.

☑    Other (explain):

Declare UCSD's four-year suspension penalty against the plaintiff invalid and award the plaintiff a degree and a graduation certificate according to the usual standards.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          _____

Plaintiff's Signature:     Huyun Bo

Plaintiff's Printed Name:   HUYUN BO

**Facts and Reasons**

The plaintiff is a student at UCSD. The two defendants are the University of California Board of Regents and the Director of Student Affairs Policies, Standards, and Conduct at UCSD, respectively.

In August 2024, UCSD ultimately confirmed a four-year suspension for the plaintiff. This is an extremely unfair and irresponsible decision, with absurd and illogical reasoning that has ruined the plaintiff's life. More importantly, in October 2022, UCSD had already imposed a one-year suspension on the plaintiff for the same complaint. Due to the related complaints and suspension, the plaintiff's mild depression suddenly escalated to severe depression. At one point, the plaintiff was unable to control his emotions, remained bedridden all day, had a reversed sleep schedule, was afraid to go out, and lost social skills, suffering significant physical and mental distress. On the day the investigation report was received, the plaintiff even briefly had suicidal thoughts.

The plaintiff asserts that the defendant's repeated punishment and miscarriage of justice have violated the plaintiff's constitutional rights. Given that this court has jurisdiction over constitutional interpretation, the plaintiff filed a lawsuit with your honorable court. He hope the court will ascertain the facts and rule in favor of the plaintiff.

The original text of the Fifth Amendment to the United States Constitution is: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb,"and the Constitution does not explicitly restrict this to criminal cases. In contrast, the next sentence, "nor shall be compelled in any criminal case to be a witness against himself,"clearly limits its scope to criminal cases. On the other hand, while UCSD's suspension of the plaintiff appears to be an administrative disciplinary action, it in fact has characteristics and effects similar to criminal sanctions, namely punishment, retribution, and deterrence. The suspension was not the complainant's demand but a decision by UCSD to uphold its campus discipline, which is very different from civil

1  cases. Complainant Yijia Yuan's demand was for the plaintiff to stay 100 yards away

2  from her, which had already been achieved through school and court no-contact orders.

3  On September 13, 2023, the San Diego County Court issued a five-year no-contact order

4  against the plaintiff.

5      In United States v. One Assortment of 89 Firearms, 465 U.S. 354 (1984), the U.S.

6  Supreme Court elaborated on the criteria for applying the "Double Jeopardy Clause,"

7  examining whether the second punishment was compensatory or punitive, and whether it

8  was an in rem (against property) or in personam (against a person) proceeding. If the

9  second punishment is deemed in rem and compensatory, the "Double Jeopardy

10  Clause"does not apply. Conversely, if it is in personam and punitive, the Clause does

11  apply. The Supreme Court also noted that the marks of punitive nature are "retribution"

12  and "deterrence." According to these criteria, the plaintiff believes UCSD's punishment

13  of the plaintiff should apply the "Double Jeopardy Clause." In United States v. Halper,

14  490 U.S. 435 (1989), the Supreme Court further stated that if civil sanctions under the

15  False Claims Act are grossly disproportionate to compensating government loss and can

16  only be explained as serving deterrent or retributive purposes, such sanctions are punitive

17  and subject to the "Double Jeopardy Clause."

18      In UCSD's notification of punishment on April 18, 2024, it was twice confirmed that

19  the plaintiff's 2022 one-year suspension was due to "multiple violations of the

20  university's no-contact order and failure to comply with instructions from university

21  officials." Meanwhile, UCSD claims the 2022 suspension was "part of the current case

22  (2024)." UCSD explains that the first suspension was temporary, and the second was

23  formal; it also states that the first suspension was due to the plaintiff violating the school

24  ' s no-contact order, while the second was for incidents of violence and sexual

25  harassment. If, as UCSD explains, the two penalties are merely temporary versus formal,

26  then the plaintiff asks why the school does not deduct the already served one-year

27  suspension from the four-year period of the second suspension? Only by doing so can the

28  continuity between the two suspensions be demonstrated! If, as UCSD explains, the two

1   suspensions have different reasons, then it involves constitutional issues. We cannot
2   abstractly consider the school's no-contact order, as it is intrinsically linked to the
3   complainant's complaint, and the two penalties are intricately related, effectively
4   constituting the same "offense". A similar situation can be compared to United States v.
5   Dixon, 509 U.S. 688 (1993), where, because Dixon had been convicted of contempt of
6   court, the Supreme Court prohibited subsequent prosecution for intent to distribute
7   cocaine, recognizing that the authority to punish contempt and statutory offenses cannot
8   coexist.

9       Although UCSD's two penalties against the plaintiff were not the result of criminal
10  cases, the plaintiff's position in the school is unequal to that of UCSD, similar to the
11  relationship between an individual and the government in criminal cases, where the
12  weaker party requires legal protection. The purpose of the Fifth Amendment is to protect
13  the human rights of relatively weaker individuals from being harmed by the abuse of
14  power by resource-advantaged governments. In UCSD's punishment of the plaintiff, it is
15  evident that UCSD abused its adjudicative power.

16      UCSD's four-year suspension of the plaintiff must be overturned. This case involves
17  not only the issue of "double jeopardy" under the Fifth Amendment to the U.S.
18  Constitution but also raises concerns about the Due Process Clause of the Fourteenth
19  Amendment and the right to a fair trial guaranteed by the Sixth Amendment. It is a clear
20  instance of a miscarriage of justice.

21      For instance, the final decision clearly states that a two-year suspension was imposed
22  as a sanction for the plaintiff violating relevant school regulations on "relationship
23  violence and stalking." What is unacceptable is that UCSD did not provide any credible
24  evidence as a basis for such sanctions, instead relying solely on the complainant's
25  baseless accusations and their own imagination to pin the crime on the plaintiff. The
26  incident report from February 22, 2022, was used by the defense as the primary evidence
27  of the plaintiff's alleged violence. However, the facts are quite the opposite; this report
28  actually proves that the plaintiff did not engage in physical violence or non-physical

1  abuse against the complainant. The police determined that the plaintiff's actions did not
2  meet the criteria for a "72-hour hold." UCSD hearing officer Stephanie Slone was aware
3  that on that day, the complainant apologized to the plaintiff for the incident and even
4  invited the plaintiff to her dormitory. According to the complainant's own words on page
5  9 of the investigation report: "He is right that I apologized to him that I think I shouldn't
6  have called the Police and made the thing more serious than I expected." The
7  complainant actually has a mental health condition, experiencing frequent mood swings,
8  which she describes as "unpredictable" in her own words (see evidence). The
9  complainant even suggested to the plaintiff that he should call the police next time so she
10 could experience the thrill of riding in a police car (see evidence). This clearly indicates
11 that the complainant has mental health issues. Also, on page 9 of the investigation report,
12 the complainant claims to be "without any moderate or strong anxiety or depression," yet
13 does not rule out the possibility of mild anxiety or depression.In fact, as of March 17,
14 2022, the plaintiff and the complainant still maintained close communication (see
15 evidence), contrary to the complainant's claim of a "breakup" as early as November 2021.
16 If the complainant's statements were true, how could there have been a subsequent trip to
17 Hawaii and birthday celebrations? The no-contact order issued by the court on September
18 13, 2023, cannot serve as evidence of the plaintiff committing violence. Stephanie Slone
19 also acknowledged in her report that "the court's issuance of a restraining order does not
20 determine the defendant's conduct." It should be noted that at the time of the judgment,
21 the plaintiff had not yet recovered from severe depression and was participating in a
22 lawsuit for the first time in his life. Coupled with language barriers, the plaintiff was
23 completely unable to contend with the complainant's lawyer. The judge did not mention
24 the plaintiff's rebuttal arguments and evidence at all and directly ruled. Although such a
25 ruling was unfair, the plaintiff did not mind, as he did not wish to interact with the
26 complainant any longer, only regretting that the court's no-contact order was not issued
27 bilaterally, fearing the complainant might deliberately contact the plaintiff to falsely
28 accuse him of violating the court's order. The plaintiff's concerns are justified, as the

1  complaint incident was actually a retaliatory act by the complainant after failing to extort

2  $20,000 from the plaintiff. Despite clear evidence, UCSD's hearing officer chose not to

3  believe the plaintiff's explanation and even rejected some of the plaintiff's evidence. Such

4  arbitrary decisions have ruined the plaintiff's life, which is unfair and extremely

5  irresponsible.Due to this ruling, the plaintiff's plans to pursue graduate studies have fallen

6  through!The complainant's accusation that the plaintiff once grabbed her arm and on

7  another occasion pushed her onto the bed is completely unfounded, with no witnesses or

8  evidence. In the investigation report on page 39, Stephanie Slone wrote: "With no

9  witnesses to the event, there is insufficient information to determine if it was more likely

10  than not that the arm grab occurred." Despite this, UCSD's hearing officer still chose to

11  believe the complainant's lies, assuming that in such incidents, the female has absolute

12  credibility—blatant gender discrimination! The plaintiff never threatened to kill a cat

13  with a knife nor threatened suicide. In fact, it was the complainant who threatened to

14  commit suicide with a knife. The investigation report on page 13 and the police UCPD

15  report #2022-0363 both acknowledge that the plaintiff made a welfare call for the

16  complainant's life safety on January 12, 2022. The plaintiff explained this to the school

17  and the hearing officer multiple times, but they ignored it. As for stalking, it is even more

18  ridiculous. Two people (and a third person) walking side by side to the library can be

19  called stalking? Attending the same class and leaving together during a close relationship

20  can be called stalking?

21      In UCSD hearing officer Stephanie Slone's report, she acknowledged that "most of the

22  ongoing conduct was non-physical," but without any witnesses or evidence, she "found

23  that the respondent grabbed the complainant's arm outside the library in May or June

24  2022." （The investigation report clearly states, "With no witnesses to the event, there is

25  insufficient information to determine if it was more likely than not that the arm grab

26  occurred."） Stephanie Slone then shifted focus to a large amount of non-physical

27  behavior.

28

5

The 2022 University of California Interim Policy on Sexual Violence and Sexual Harassment defines relationship violence as follows (verbatim):

> Physical violence against the complainant or someone closely related to the complainant (such as a current or former spouse or intimate partner, child, or other relative), or intentional or reckless physical or non-physical behavior against the complainant or someone closely related to the complainant (such as a current or former spouse or intimate partner, child, or other relative), which causes a reasonable person in the complainant's position to fear physical violence against themselves or someone closely related to them, and is part of a pattern of abuse by someone who has had a marital, romantic, or intimate relationship with the complainant, or shares a child with the complainant.

From the above definition, it is clear that non-physical behavior can only be considered violence if it meets the following condition—"and is part of a pattern of abuse." Note the word "and," indicating that conditions must be simultaneously met. Otherwise, every behavior on the street would be considered violence!

Stephanie Slone did not further elaborate on proving this "and," instead bringing up irrelevant behaviors such as "the respondent repeatedly contacted the complainant via phone, text, social media, and bank applications" to substitute for "and" as the basis for determining violence. This is clearly against common sense, showing obvious bias and deliberate intent.

When determining that stalking was established, Stephanie Slone, lacking evidence, once again resorted to the "jack of all trades"—citing "appearing at the complainant's residence when the complainant did not wish to see him, calling the complainant, and sending a large number of messages after being told the behavior was unwelcome"as the basis for supporting stalking. What is stalking? It is when a person follows another while trying not to be noticed. Going to someone's residence is stalking? Calling someone is stalking? Sending messages is stalking? When two people are close, is attending and

6

1   leaving classes together considered stalking?The plaintiff seriously doubts the reasoning

2   and logic of UCSD's hearing officer.

3       What is more concerning is that the plaintiff found UCSD's "authorities" acting

4   deliberately. Investigator Susan Gilmor responded to the plaintiff's question at the fact-

5   finding hearing by saying, "I have never seen the original evidence. I don't believe it's my

6   responsibility or duty to verify the authenticity of the complainant's evidence." Susan

7   Gilmor also admitted that there was no police report confirming any violent behavior by

8   the plaintiff. This critical testimony was deliberately omitted by the hearing officer in the

9   report! This was not the only fact and evidence concealed by UCSD's hearing officer. In

10  fact, until the end of the hearing, the complainant never presented original evidence to the

11  plaintiff or UCSD's relevant authorities. The plaintiff's request to present his own original

12  evidence at the hearing was denied. Stephanie Slone held the adjudicative power; she was

13  the boss. Student Affairs Policy, Standards, and Conduct Director Ben White did the

14  same. The school rules clearly state that "non-consensual personal contact violations

15  typically result in a one-year probation along with appropriate administrative and

16  educational sanctions." However, in the case of Ben White, probation was replaced with

17  suspension. It is lamentable how small facts appear in the face of power!

18      Someone is accused by a witness of holding a bloody knife, with a corpse lying

19  nearby. People naturally associate this person with being the murderer. But when this

20  person provides evidence showing the victim died at 3 PM, and the witness saw him

21  holding the knife at 5 PM, the judge, feeling his authority challenged, hides this evidence,

22  and the person is ultimately convicted of murder. This is a microcosm of how power

23  distorts facts.

24      During the hearing, the plaintiff repeatedly told the hearing officer that the

25  complainant had a mental illness and was an irrational person. The plaintiff claimed that

26  the complainant's accusation was motivated by revenge and submitted relevant evidence

27  to the hearing officer. This included photos taken during a trip to Hawaii with the

28  complainant, the plaintiff, and two other classmates from December 13 to December 19,

7

1  2021. (Not accepted) Chat records from March 11, 2022 (Beijing time March 12, 2022),
2  when the complainant visited the plaintiff's residence to celebrate her birthday. Intimate
3  messages and WeChat contacts between the two continued until March 17, 2022, and
4  group chat contacts continued until April 29, 2022. The complainant's clear rejection of
5  the plaintiff was on May 26, 2022, according to records. These pieces of evidence are
6  enough to prove the complainant's claim of a breakup in November 2021 is a lie, contrary
7  to the investigation report's so-called "undisputed facts." However, Stephanie Slone
8  turned a blind eye and continued to dwell on the police report from February 22, 2022,
9  assuming that the two had already broken up in November 2021. She considered all
10  subsequent actions as stalking and harassment, leading step by step down the wrong path
11  to an erroneous judgment.She may choose not to believe the plaintiff's statements, but
12  why ignore the evidence? Please forgive the plaintiff's inability to restrain his emotions,
13  feeling compelled to use the term "vegetative state" to describe this hearing officer.

14      The above examples are not an exhaustive list of UCSD's acts of unjust adjudication.
15  Similar issues exist in the identification of two other offenses as well. These two offenses
16  are "Misconduct Related to Gender by the Ministry of Education" and "Physical
17  Abuse/Threats/Health and Safety." Regarding the allegations of threats, there is also
18  controversy. UCSD hearing officer Stephanie Slone did not reach a conclusion on the
19  threat allegation, but Ben White, the Director of Student Affairs Policy, Standards, and
20  Conduct, imposed corresponding penalties.

21      It is clear that, based on the existing facts, there is no way to infer that the plaintiff
22  engaged in violent or stalking behavior. In the United States, the judicial system
23  traditionally presumes that the accused is innocent and requires evidence to prove their
24  guilt, rather than presuming the accused is guilty and requiring evidence to prove their
25  innocence. If this court does not support the plaintiff's request and allows the school's
26  authority to remain unchecked, it is believed that there will be an increasing number of
27  wrongful cases in the future, and the risk of factual errors leading to wrongful convictions
28  will rise sharply. UCSD, as a university, a non-professional institution, does not possess

the powerful judicial adjudicative capacity of a court, yet it simulates court-like adjudications resembling criminal cases. If today its actions can escape the constraints of the Fifth Amendment simply due to a literal interpretation of "criminal cases," how can the original intent of protecting human rights be realized? UCSD claims that the plaintiff's actions do not constitute a crime, so they can be punished twice. The plaintiff would like to ask, if a guilty person cannot be subjected to physical harm twice, then shouldn't an innocent person be even less subject to physical harm twice? Stepping back, even if the doctrine of "Double Jeopardy Clause " does not apply in this case, UCSD's miscarriage of justice still constitutes a violation of the plaintiff's constitutional rights. This Court should support the plaintiff's claim.

The judiciary in the United States is constantly progressing. Decades ago, courts were not obliged to provide free defense lawyers for defendants in non-capital criminal cases, yet now this practice has become customary, despite no written constitutional provision. The plaintiff hopes to advance American judiciary with this case, just as the homeless Clarence Gideon once did.